# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

_____

ALAN GERHART,

                                              CV 09-08-M-JCL

            Plaintiff,

    vs.

                                        ORDER

LAKE COUNTY MONTANA and
LAKE COUNTY COMMISSIONERS,
MIKE HUTCHIN, PADDY TRUSLER,
and CHUCK WHITSON, in their
individual and official capacities,

            Defendants.

_____

This matter is before the Court upon Defendants' Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56.  For the reasons discussed below, the Court deems it appropriate to grant the motion, and dismiss this action.

## I.  INTRODUCTION

This action arises from a dispute between the parties regarding a permit that Plaintiff Alan Gerhart sought to obtain from the Defendants for a private road approach onto a county road.  Defendants denied Gerhart's permit application.

Gerhart owns real property in the Juniper Shores Subdivision on Flathead Lake near Dayton, Montana.  Gerhart has legal access to his property via a

ORDER - PAGE 1

community lane designated on the subdivision plat, and he also has access on an easement across his neighbor's property.  Nonetheless, in early November 2007, Gerhart constructed a direct approach from his property to Juniper Shores Road - a Lake County road.  Gerhart completed construction of the approach without having obtained a permit from Lake County.

Thereafter, Larry Ehle, the Lake County Road Superintendent, informed Gerhart that he needed to apply for a road approach permit from Lake County.

On November 15, 2007, Gerhart submitted a signed Application and Permit for Road Approach from Lake County.  Ehle reviewed and signed the application, with a recommendation to the Defendant Lake County Commissioners - Mike Hutchin, Paddy Trusler, and Chuck Whitson ("Commissioners") - that Gerhart be granted a road approach permit.

After the Commissioners received Gerhart's application, issues arose as to whether the approach was safe, whether it was too steep, and whether it crossed over Gerhart's septic drain field.  Consequently, the Commissioners placed Gerhart's application on "hold" in late 2007, or early 2008.  No further action was taken on the application at that time, and Defendants concede the application "fell through the cracks" for several months.

ORDER - PAGE 2

Some time in the Spring of 2008 Defendants became aware that no formal action had ever been taken with respect to Gerhart's permit application. The Commissioners then decided to deny the application.

At the direction of the Commissioners, Ehle sent a letter dated June 12, 2008, to Gerhart. Ehle informed Gerhart that Gerhart had constructed his road approach onto Juniper Shores Road without a permit, and that the Commissioners refuse to grant Gerhart a road approach permit. Ehle's letter, however, did not inform Gerhart of the basis for the Commissioners' denial of a permit. Instead, Ehle informed Gerhart that because the approach constituted an impermissible highway encroachment and a public nuisance, Gerhart would have to remove it or face legal consequences.

In response, Gerhart retained an attorney Kim Christopherson to assist him with his permit application. On June 27, 2008, Christopherson sent a letter to Ehle which asserted the Commissioners' denial was arbitrary and capricious, discriminatory, and violated Gerhart's rights to due process and equal protection of the law.

On July 17, 2008, the Commissioners sent Christopherson a letter repeating that the road approach constituted an unlawful encroachment. Noting that Gerhart had alternative access to his property, the Commissioners informed Gerhart they

ORDER - PAGE 3

had safety concerns regarding his road approach to Juniper Shores Road - a road

they described as narrow and curved.  They further stated they believed the road

approach crossed Gerhart's sepetic system in violation of a Lake County

regulation.  The Commissioners directed Gerhart to cease using the road approach

and remove it.  Finally, the Commissioners informed Christopherson that Gerhart

could confer with the Commissioners further if he desired.  Specifically, the

Commissioners stated as follows:

> If you wish to request a meeting with the Board regarding the denial of you
> encroachment application, please contact the Board within 14 days of your
> receipt of this letter.

Dkt. # 30-3 at 3 of 3.

Christopherson responded to the Commissioners in a letter dated August 1,

2008, again asserting the Commissioners' denial of a permit constituted disparate

treatment of Gerhart.  Christopherson also stated that Gerhart's road approach did

not cross his drain field.

Gerhart filed this action in response to the Commissioners' denial of his

road approach application.  Gerhart advances federal claims against the

Commissioners, both in their individual and official capacities, pursuant to 42

U.S.C. § 1983.  He alleges the Commissioners' conduct in reviewing and denying

ORDER - PAGE 4

his application violated his rights to due process and equal protection of the law as guaranteed him by the Fourteenth Amendment to the United States Constitution.

Gerhart also advances claims under Montana law.  He alleges Defendants' conduct violated the Montana Open Meeting Act at Mont. Code Ann. §§ 2-3-202 and 203, and his due process and equal protection rights as guaranteed him by the Montana Constitution.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) entitles a party to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to

ORDER - PAGE 5

interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  A party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*.  The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of the case. *Id*. at 248.

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds as noted in Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

**B.  Gerhart's Federal Claims  - 42 U.S.C. § 1983**

To establish that a defendant is liable for a claim under 42 U.S.C. § 1983 a "plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right.'"  *Harry A. v. Duncan*, 351 F. Supp. 2d 1060, 1072 (D. Mont. 2005) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  Section 1983 liability requires proof that a defendant's deliberate or affirmative act or omission caused the unconstitutional deprivation. *Harry A.*, at 1072 (citing *Stevenson v. Koskey*, 877 F.2d 1435, 1439 (9th Cir. 1989)).  *See Daniels v. Williams*, 474 U.S. 327, 330-332 (1986) (concluding mere negligent conduct is insufficient for a claim under § 1983).

### 1.      **Defendant County Commissioners**

The Commissioners move for summary judgment dismissing Gerhart's federal claims advanced under 42 U.S.C. § 1983 on the ground that they are entitled to qualified immunity from liability.  The doctrine of qualified immunity provides a public official performing a discretionary function with immunity from liability in a civil action for damages, provided his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The

ORDER - PAGE 7

immunity is "immunity from suit rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The analysis employed in determining whether a government official is entitled to qualified immunity consists of two questions.  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under this inquiry, if there is no constitutional violation no further inquiry is necessary.  *Id*.

Second, if a violation of a constitutional right can be found, the court must consider whether the right was clearly established.  *Id*.  Under this inquiry, a defendant may be shielded from liability if his or her "actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow*, 457 U.S. at 818).

When considering qualified immunity, the court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 818 (2009).

ORDER - PAGE 8

a.    <u>**Substantive and Procedural Due Process Claims**</u>

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. Amend. XIV, § 1.  The clause provides a basis for both substantive and procedural due process claims.

To obtain relief on a substantive due process claim, a plaintiff must establish that a state actor deprived the plaintiff of a constitutionally protected life, liberty or property interest.  *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).  If a protected interest is established, "the 'irreducible minimum' of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose."  *Id*. at 1088 (citation omitted).

Similarly, to succeed with a procedural due process claim, "the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"  *Shanks*, 540 F.3d at 1090 (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

Therefore, under either a substantive or a procedural due process claim, the threshold consideration is whether the plaintiff has been deprived of a protected interest in property or liberty.  *American Manufacturers Mut. Ins. Co. v. Sullivan*,

ORDER - PAGE 9

526 U.S. 40, 59 (1999).  "Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process."  *American Manufacturers*, 526 U.S. at 59.

Generally, to determine whether a protected property interest exists the courts look to state law.  *WMX Technologies, Inc. v. Miller*, 80 F.3d 1315, 1318 (9th Cir. 1996).  Protected property interests, such as rights to a land development permit, "are created and their dimensions are defined by existing rules or understandings that stem from ... state law."  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 903 (9th Cir. 2007) (quoting *Board of Regents of the State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).  A property right does not exist by virtue of a person's unilateral need, and to claim a property interest in a benefit from a governmental entity the individual must demonstrate a legitimate claim of entitlement to the benefit.  *See Shanks*, 540 F.3d at 1091 (citing *Roth*), and *Stamas v. County of Madera*, 2009 WL 2513470, *8 (E.D. Cal. 2009) (citing *Roth*).

To conclude that state law establishes a protected property right for purposes of a due process claim, the law must be phrased so as to mandate or direct that a state actor reach a particular result.

> Only if the governing statute compels a result "upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body," does it create a constitutionally protected property

ORDER - PAGE 10

interest.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164-65 (9th Cir. 2005); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998) (holding that "specific, mandatory" and "carefully circumscribed" requirements constrained discretion enough to give rise to property interest).  Conversely, "a statute that grants the reviewing body unfettered discretion to approve or deny an application does not create a property right."  *Thornton*, 425 F.3d at 1164.  There is no protected property interest if "the reviewing body has discretion ... to impose licensing criteria of its own creation."  *Id*. at 1165.

*Shanks*, 540 F.3d at 1091.  Thus, a plaintiff may have a protected property interest in the issuance of a permit relative to real property where the state laws or regulations require that a permit be issued once certain specified requirements have been satisfied.  *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988).  Absent language that imposes constraints on a governing body's discretion in issuing or denying a permit, however, a plaintiff cannot establish the existence of a protected property right.  *Shanks*, 540 F.3d at 1091-92.  Both a substantive and a procedural due process claim will fail where no protected property right exists.  *Id*. at 1088, 1092.

In the present case, Gerhart asserts the Commissioners' actions violated his protected property rights which he identifies as his general "property interest in his real property located in Lake County," and his asserted "right to access a county road which borders his property[.]"  Dkt. # 41 at 7 and 9.  Gerhart fails to cite - and the Court has not found - any legal authority that supports the proposition

ORDER - PAGE 11

these "rights" qualify as protected property rights for purposes of his due process claims.

Montana law provides that Lake County and its Commissioners have discretion with respect to their management and control of county roads.  "Each board of county commissioners may in its discretion do whatever may be necessary for the best interest of the county roads and the road districts."  Mont. Code Ann. § 7-14-2102.

In view of the Commissioners' discretionary powers established in § 7-14-2102, Gerhart must identify the existence of constraints imposed on the Commissioners' exercise of their discretion.  Gerhart has failed to point to any limitations on this discretion.  In fact, the parties agree there are no formal procedures governing Lake County's review and consideration of a road approach permit, and it is undisputed Lake County has no formal standards on which can base its decision to issue or deny any particular road approach permit. Consequently, there exist no formal requirements or standards which, if satisfied by an applicant seeking a road approach permit, require the Commissioners to grant the application.  Neither state law or regulations mandate any particular result with respect a road approach permit application.  Thus, state law does not

ORDER - PAGE 12

afford Gerhart a protected property interest in obtaining a road approach permit for purposes of both his substantive and procedural due process claims.

Based on the forgoing, Gerhart cannot establish that the Commissioners violated his due process rights.  Absent a violation of a constitutional right no further inquiry is required under the qualified immunity doctrine.  The Commissioners are entitled to qualified immunity with respect to Gerhart's due process claims.

### b.    <u>Equal Protection Claim</u>

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  The clause essentially directs "that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  Ordinarily, the clause serves to prohibit a state actor from discriminating against an individual based on his or her membership in a protected class, or based on a particular classification in which the individual is placed.  *The Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d 690, 702-03 (9th Cir. 2009).

ORDER - PAGE 13

An equal protection claim, however, may also be premised on a state actor's unique treatment of an individual - described as a "class of one" claim. *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). To obtain relief on a class-of-one claim, the plaintiff must establish that the state actor "intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *Id*. (citations omitted). The "plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed ... to being an accident or a random act.'" *Id*. (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2nd Cir. 2001)). The plaintiff bears the burden of presenting evidence establishing these elements of a "class of one" claim. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (citation omitted).

Gerhart contends the Commissioners have treated him differently than other property owners on Juniper Shores Road. Gerhart asserts other neighboring lot owners have recently constructed road approaches onto Juniper Shores Road without having obtained a permit. Gerhart contends, that unlike him, Lake County and the Commissioners have not required those other neighbors to obtain a road approach permit. Dkt. # 42-1 at 12-13.

Although Gerhart presents evidence the Commissioners may have treated him differently than other property owners similarly situated, he has not presented

ORDER - PAGE 14

any evidence suggesting the Commissioners intentionally, as opposed to accidentally, discriminated against Gerhart without a rational basis.  Gerhart argues the Commissioners did not initially provide him with the reasons for their denial of his road approach application, and they improperly identified reasons only after pressed by Gerhart's counsel to do so.  The stated reasons on which the Commissioners based their denial were public safety issues, the steepness of the approach, and their understanding that the location of the approach crossed Gerhart's septic drain field.  Gerhart contends the Commissioners only developed these reasons after the fact which demonstrates the Commissioners selectively and arbitrarily chose to enforce the requirement for a road approach permit on Gerhart.

Other than Gerhart's mere suggestion, the County Commissioner's subsequent identification of the grounds for their denial of Gerhart's permit is not evidence of intentional discrimination against Gerhart.  Gerhart has not pointed to any provision requiring the Commissioners to disclose its reasons at the same time it notified him of their denial.  Gerhart points to no prohibition in the law that prevents the Commissioners from identifying its reasons some time after it denies a road approach permit.  Rather, the Commissioners have full discretion in exercising its control of county roads.  Mont. Code Ann. § 7-14-2102.

ORDER - PAGE 15

The reasons on which the Commissioners relied in denying Gerhart's application provide a rational basis for the alleged difference in their treatment of Gerhart.  The Commissioners acted on information that Gerhart's road crosses his septic drain field in violation of a Lake County regulation.  Although Gerhart states in briefing that his road approach does not cross his drain field, he does not point to any evidentiary materials which establish, as a factual matter, that the approach does not cross his drain field.  Therefore, the Commissioners have identified a rational basis for denying Gerhart's permit.

Even if the Court were to assume the approach does not cross the drain field, the Commissioners have established they acted in reliance upon information provided to them indicating the approach crosses the drain field.  Mike Hutchin testified in his deposition that he signed the Commissioners' letter denying Gerhart's permit due to the septic drain field issue.  Charles Whitson testified he acted on information provided by "the road superintendent" who had stated that Gerhart's approach crosses his drain field.  Even if the Commissioners were misinformed, their conduct in denying the permit would amount to nothing more than accidental conduct - not the intentional conduct essential to establish an equal protection claim.  *See North Pacifica*, 526 F.3d at 486.

ORDER - PAGE 16

Finally, Gerhart believes one of Lake County's employees in its Environmental Health Department, Terry Murphy, has a personal vendetta against Gerhart.  Gerhart has presented a copy of an email from Terry Murphy to Kurt Moser, a Deputy Lake County Attorney, in which Murphy refers to his "long history with Mr. Gerhart."  Dkt. # 42-4 at 6 of 7.  In his email Murphy described Gerhart as dishonest and "smooth (to the point of being slimy)."  *Id*.  Murphy suggested to Moser that if "the county has other issues [with respect to Gerhart] then lets team up and make it worth our while."  *Id*.  Murphy also offered to issue a notice of violation to Gerhart for Gerhart's road which Murphy believes crosses Gerhart's septic drain field.  *Id*.

Although Murphy's email to Moser may demonstrate Murphy's personal animosity towards Gerhart, Gerhart has not presented any evidence demonstrating that the Commissioners denied Gerhart's application based on Murphy's opinions of Gerhart.  There is no evidence that any of the Commissioners share in Murphy's opinions of Gerhart, or that the Commissioners denied Gerhart's application for personal reasons.  Murphy's conduct and animosity simply is not attributable to the Commissioners.

Based on the forgoing, the Court concludes Gerhart has not presented any evidence on which a jury could conclude that the Commissioners intentionally,

and without a rational basis, treated Gerhart differently from others similarly situated.  Therefore, Gerhart cannot establish the Commissioners violated his equal protection rights, and no further inquiry is necessary under the qualified immunity doctrine.  The Commissioners are immune from liability.

### 2.    **Defendant Lake County**

Lake County moves for summary judgment dismissing Gerhart's federal claims based on the requirements applicable to § 1983 claims advanced against a municipality or county entity.  For the reasons stated, the Court agrees that Gerhart's § 1983 claims fail as against Lake County.

A county or municipal governmental entity qualifies as a "person" within the meaning of 42 U.S.C. § 1983, and can be sued for damages under that statute. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978).  To impose liability under § 1983 against a county, however, a plaintiff must show, inter alia, "that [the plaintiff] possessed a constitutional right of which [the plaintiff] was deprived[.]" *Plumeau v. School District #40*, 130 F.3d 432, 438 (9th Cir. 1997) (citation omitted).  "Liability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.' "  *Rosenbaum v. City and County of*

ORDER - PAGE 18

*San Francisco*, 484 F.3d 1142, 1155 (9ᵗʰ Cir. 2007) (quoting *Monell*, 436 U.S. at

694 and *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9ᵗʰ Cir.

2002)).

As discussed above, Gerhart has not established the viability of his due

process and equal protection claims, and those claims do not survive summary

judgment.  Since Gerhart cannot establish a violation of his constitutional rights,

his § 1983 claims against Lake County similarly fail.

### C.  Supplemental Jurisdiction Over Gerhart's State Law Claims

Since the Court concludes Gerhart's federal claims fail as a matter of law,

the Court must consider whether it should exercise supplemental jurisdiction

pursuant to 28 U.S.C. § 1367 over any other claims advanced by Gerhart under

Montana law.

Section 1367 provides that where a district court has original jurisdiction in

a civil action it shall also have supplemental jurisdiction over other claims "that

are so related to claims in the action within such original jurisdiction that they

form part of the same case or controversy[.]"  28 U.S.C. § 1367(a).   However, the

district court may decline to exercise supplemental jurisdiction for various reasons

stated in the statute, including when "the district court has dismissed all claims

over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  Supplemental

jurisdiction under 28 U.S.C. § 1367(c) is discretionary, and courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).

Because the Court will dismiss of all of Gerhart's federal claims, it will decline to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(3). Any claims Gerhart may have under Montana law are matters of state and local concern, and are more properly addressed in the courts of the State of Montana.

## III.  CONCLUSION

For the reasons stated, Gerhart has failed to raise a genuine issue of material fact demonstrating Defendants violated his rights protected under the United States Constitution. Therefore, Defendants' Motion for Summary Judgment is **GRANTED**, and Gerhart's claims under 42 U.S.C. § 1983 are **DISMISSED** with prejudice, while Gerhart's claims advanced under Montana law are **DISMISSED** without prejudice.

ORDER - PAGE 20

The Clerk of Court is directed to enter judgment in favor of Defendants accordingly.

DATED this 25th day of January, 2010.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

ORDER - PAGE 21